71 So.2d 861

Succession of WOOLFOLK.

No. 41327.

March 22, 1954.

Alwyn J. Justrabo, New Orleans, for appellant.

James G. Schillin and Michael M. Irwin, New Orleans, for appellee.

LE BLANC, Justice.

On this appeal we are concerned with a rule taken by James L. Cooper in the succession proceedings of his deceased wife, Amelie Jane Woolfolk, from whom he had been legally and judicially separated.

These parties were married on June 30, 1951. Just four days before, they had entered into a prenuptial contract executed before a Notary Public evidencing their intention to specifically renounce the dispositions of the law of Louisiana relative to the community of acquets and gains between spouses and to remain separate in property. In the agreement it is stipulated that:

"All property and effects of the said intended husband, whether owned by

him at the time of the celebration of the said intended marriage or acquired during said marriage, are hereby declared to be his separate property.

"All property and effects of the intended wife, whether owned by her at the time of the celebration of said intended marriage or acquired in her name during said marriage, are hereby declared to be paraphernal property, and she does hereby expressly reserve to herself the entire administration of her movable and immovable property, and the free enjoyment of her revenues."

The succession proceedings of Mrs. Cooper were initiated by her father, Robert W. Woolfolk, who petitioned the Court on January 20, 1953, for an inventory of her estate and prayed that in due time, letters of administration issue to him. The inventory prayed for was duly taken.. The property listed consisted all of movable effects, mostly of a household nature, and one automobile. At the taking of the inventory, James L. Cooper, decedent's surviving husband, made claim to some twenty-nine separate items of property, including the automobile, as being his separate property.

Upon the inventory having been homologated, Robert M. Woolfolk was appointed and he duly qualified as administrator of the succession. Shortly thereafter, James L. Cooper filed a rule against him, in his capacity as such, ordering him to show cause why the items of property claimed by him should not be turned over to him.

A few days later, the administrator of the succession, suggesting to the Court that certain other items of property listed by him should be in the possession of James L. Cooper, filed a rule against the latter ordering him to show cause why these items should not be delivered immediately to the succession for the purpose of administering them.

Both rules were made returnable the same day. Neither defendant in rule filed an answer but on the day of trial each appeared and contested those that had been brought against him. The administrator of the succession took the position in the rule against him that the property claimed by mover was the property of the decedent, having been given to her by her husband, and should be administered for the purpose of paying the debts of the succession. In the rule brought against Cooper he disclaimed having knowledge about most of the articles claimed as his wife's property and which were said to be in some apartments he rented, and through his counsel stated to the Court that anything that was found not to belong to him would be turned over to the administrator of her succession.

After trial the district judge ruled in favor of the administrator on the rule

taken by Cooper decreeing all items of property claimed by him, except one, to belong to the succession. The single item, a clock, he held to belong to Cooper and the succession jointly. The rule taken by the Administrator against Cooper was dismissed at the costs of the succession. Cooper appealed from the judgment on the rule decided against him. The administrator did not appeal from the Court's ruling against him on the other rule. The only matter for review therefore is the trial judge's ruling on the ownership of the property claimed by Cooper in the rule presented by him.

Article 2325 of the LSA–Civil Code provides that "in relation to property, the law only regulates the conjugal association, in default of particular agreements, which the parties are at liberty to stipulate as they please, provided they be not contrary to good morals, and under the modifications hereafter prescribed." Good morals are not involved in the agreement entered into between James L. Cooper and Mrs. Amelie Jane Woolfolk on January 26, 1951, nor are we concerned with any of the modifications prescribed in succeeding articles of the Code. The agreement was a simple one in which the parties stipulated that all property belonging to each at the time of the celebration of the marriage between them, or that may be acquired during the marriage, was to be the separate property of each. With regard to that of the prospective wife, she expressly reserved to herself the entire administration.

It is shown that Cooper was the purchaser of the automobile, in his name, before the marriage, as evidenced by the title certificate offered in evidence. He also testified that he owned other of the articles in controversy before the marriage and that as to those acquired thereafter, he purchased them in his own name as shown by the sales slips and receipts produced by him. Therefore it would seem that unless he made a donation of all these items to his deceased wife, they still belong to him and are his separate property. Indeed, the claim of the deceased wife's ownership made by the administrator of her succession is predicated upon a gift by the husband and it is on that basis that the district judge ruled in his favor. In this connection the trial judge seemed to be of the opinion that the property acquired by the husband after the marriage, which was mostly of a household nature and was to be used in establishing and furnishing a home for a wife and children, should be considered as gifts to the wife. That was not so, however, in his opinion, with respect to property acquired by him before the marriage, with the exception of the automobile. His holding that the automobile was also a gift to the wife was based on the possession, use, control and dominion which he found she had had of and exercised over it since its acquisition.

■ By the terms of Article 1539 of the LSA–C.C., "The manual gift, that is, the giving of corporeal movable effects, accompanied by real delivery, is not subject to any formality." This article does not dispense, however, with the necessity of proof of intention on the part of the donor to give. There is an old Latin maxim in law which reads: "Nemo presumitur donare", i. e., "No one is presumed to give." This is but another way of stating that the burden of proving the donation is on the donee, and under the decisions of this Court, the proof to support the donation must be strong and convincing. See Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502, and cases therein cited.

In this case the claim of ownership by the alleged donee is made after her death, by the administrator of her succession and he had to rely almost entirely on the cross-examination of the alleged donor in order to support it. The latter persisted in his denial that he had given the automobile and other articles to his wife and so we are left with nothing but the circumstances the trial judge referred to in his written opinion to support a donation.

Whilst it may well be that the intention to give may be inferred from the relationship between the parties and from the circumstances surrounding a given case, matters of that nature do not appear in a sufficient degree to create such inference in this case.

■ The mere fact that several items claimed by the Administrator are household articles necessary for the establishment and maintenance of the home and that these were left in the possession of the wife after the separation between the parties, is not of itself sufficient to infer a donation as here contended. At best those are circumstances which could only create a presumption that it was intended that they could thereby become community property. See Funderburk v. Funderburk, supra. But that presumption is without avail to the alleged donee in this case since she and her husband had, by their prenuptial contract, renounced the dispositions of our law relative to the community of acquets and gains between spouses and had agreed to be and remain separate in property.

■ Neither can we concur in the lower Court's holding to the effect that the continued possession and use of the automobile by the alleged donee was a circumstance from which the inference of an intention to give could be created, especially in view of the alleged donor's specific denial of such intention. His explanation why he let his wife continue to use the car after they became separated strikes us as being quite plausible. The family group consisted of his wife and three small children. Two of the children were his wife's by a former marriage and the youngest was the issue of their own marriage. When asked

why he did not claim the automobile from his wife before her death he says it was because he wanted her to have the use of it on account of having the children with her. "It was for their interest more than anything else." We conclude therefore that the administrator has failed to sustain the burden of proof which the law imposed on him to support a gift or donation of the automobile.

Only one other item requires further comment and that has reference to a clock which the trial judge held was a wedding present to both parties and therefore belonged to them jointly. In view of the uncontradicted testimony of the donor of this article that it was a personal gift to the husband we find ourselves unable to agree with the ruling of the Court as to this article also.

Several days after this matter had been argued and submitted to this Court, a motion was presented on behalf of the administrator to have certain testimony annexed thereto made part of the record. The testimony referred to was that of the defendant in rule given in an entirely different proceeding and in a different court than the one in which this rule was tried. It is obvious that even though such testimony had any probative value, it could not be considered and given effect on a motion filed at this late date.

For the reasons stated it is ordered that that part of the judgment appealed

from which declared the several articles or items of property therein listed to be the property of the Succession of Amelie Jane Woolfolk, to be administered by the administrator of the succession, be and it is hereby reversed, annulled and set aside.

It is further ordered that the said judgment insofar as it declared one clock and glass bell jar to belong jointly in indivision to plaintiff in rule James L. Cooper and to the Succession of Amelie Jane Woolfolk be also reversed, annulled and set aside and

It is further ordered, adjudged and decreed that there be judgment herein in favor of James L. Cooper, mover in rule and against the defendant, Robert M. Woolfolk, administrator of the Succession of Amelie Jane Woolfolk, decreeing all of the said property to be the separate and personal property of the said James L. Cooper and ordering the said Robert M. Woolfolk, administrator of the Succession of Amelie Jane Woolfolk, to turn over and deliver the same to the said 'James L. Cooper.

It is further ordered that all costs of these proceedings be borne by the Succession of Amelie Jane Woolfolk, wife of James L. Cooper.

HAWTHORNE, Justice (dissenting).

This case involves the ownership of various articles which had been delivered to Mrs. Cooper, the deceased, and were in her actual custody at the time of her

death. By prenuptial contract all property acquired by Cooper or Mrs. Cooper before or during the marriage was to be the separate property of each. Mr. and Mrs. Cooper separated on or about May 27, 1952, and Mrs. Cooper obtained a judgment of separation from bed and board. At the time of Mrs. Cooper's murder they had been living separate and apart for approximately six months, and Cooper had made no claim to the possession or ownership of the articles in question, which had remained in Mrs. Cooper's possession.

The trial judge, who saw and heard the witnesses testify, said: "* * * I resolve the questions of fact in favor of the deceased wife's estate in view of all the facts and circumstances attending the transactions from the very beginning." He further stated: "* * * the issue in the case is one of fact only and the facts were satisfactorily proved by a preponderance of the evidence * * *." The case therefore presents only this question of fact: Did Cooper make a manual gift of the articles in question to his wife? I cannot say that there was manifest error in the trial judge's conclusion on this question of fact. At the trial Cooper denied that he had given these articles to his wife, and, had the trial judge believed him, this of course would have ended the case, and judgment would have been rendered in his favor. Obviously the trial judge did not believe or accept Cooper's testimony.

I respectfully dissent.