RENÉ H. HIMEL, Judge ad hoc.
This case involves the ownership of an automobile which was inventoried as belonging to the estate. It was purchased new on Sept. 29, 1955, in William W. Grove’s name and the Title Certificate issued in his name.
It is contended by the executor that there was no manual gift, and that the title was placed in William W. Grove’s name for convenience only.
He contends that decedent was a resident of New Orleans, while Grove was a resident of Virginia; that Grove was not related to decedent, except that decedent raised the donee’s wife from the time that she was a child; that decedent retained possession of the car in New Orleans and had exclusive use and control of it; that she paid all repairs except $10.00; and that she paid all insurance written on the car.
, Grove alleges that the car was donated to him and asks that the estate be ordered to turn it over to him. He filed his claim and action less than one year after Mrs. Mor-let’s death.
The title of the car is in Grove’s name; it was inventoried as part of the succession.
Grove testified that decedent raised his wife from the time she was approximately three years old, and that they were very close. The car was purchased by Mrs. Morlet who had the invoice made out to Grove and had the title registered under La. Title Law for vehicles in his name and the applications for the license plates were made in his name for 1956 and 1957. He brought the title to New Orleans in March, 1957, and left it there as the car was in New Orleans. Mrs. Morlet placed the car in his name as a gift as a vehicle he and his wife could use when they visited New Orleans. He and his wife had their own vehicles at his Virginia home and on their trips, and there was no reason for them to take this car home with them.
This was the first car the title to which was placed in his name. A 1951 car before this had been placed in his wife’s name in the same way by Mrs. Morlet.
He and his wife considered these cars theirs and used them when necessary or convenient.
Grove testified that he talked to Mrs. Morlet in Mar., 1957, about his liability under La. Law as the car was in his name and “she said, to state the exact words I can’t do it, of course, but this was the idea. She said this is your car and put it under your name for you to use as you need it, words to that effect. We took it as being a vehicle that we could use whenever we needed it with no idea of taking it away from her.”
Grove admitted that Mrs. Morlet used the car when he and his wife were not in New Orleans, and, naturally, she took care of the expenses of operating it. He had his own cars, took this as a gift of an auto, didn’t have any intention of taking it away physically. “I mean I just assumed she meant for me to have the automobile, and I accepted it as such.” ev. 14 and 16.
Grove testified that Mrs. Morlet and his wife were like mother and child. The wife is one of her legatees.
Appellant contends that LSA-R.S. 13:-3722 provides that a claim against a deceased, like the one made here, must be proved by at least one creditable witness other than the claimant, and other corroborating circumstances.
*40 He contends that Grove’s testimony stands alone, and that his demand must be dismissed.
That is not so. Grove is corroborated by the testimony of the man who sold the 1951 and 1955 cars to Mrs. Morlet and by the executor.
Sidney Kern sold the 1951 Mercury to Mrs. William Grove for $2260.00. He said that Mrs. Morlet bought in her name in order to save the sales tax. He sold the 1955 to Mrs. Morlet who had it invoiced in William W. Grove’s name for the same purpose of saving taxes. This is hard to believe. We cannot conceive that Mrs. Morlet had any other idea and intention than to carry out her intention of giving the cars to Mrs. Grove and Mr. Grove.
John Roth testified that Mrs. Morlet gave him the cash money to pay for both the 1951 and the 1955 cars; that she had him to get the title certificates in the name of Mrs. Grove and in the name of Mr. Grove, with their permission, with the understanding “that they would send these title certificates back immediately. The idea of those title being handled that way was to save all that Mrs. Morlet could.” These title certificates were never changed or assigned.
He said that Mrs. Morlet sold the 1951 car and put the proceeds in the purchase of the 1955 car.
This also shows Mrs. Morlet’s intention to donate these cars.
Mrs. C. J. Patin, Mrs. Morlet’s sister, testified that Mrs. Morlet was not close to Mrs. Grove, did not like the way she treated her children, was not allowed to drive the car; and she testified that Mrs. Morlet never told her that she had given these cars to the Groves.
“The manual gift, that is, the giving of corporeal movable effects accompanied by real delivery, is not subject to any formality.”
The trial judge based his decision in Succession of Woolfolk, 1954, 225 La. 1, 71 So.2d 861.
This case holds that, in addition to delivery, strong and convincing proof must be made by the donee that the donor had the intention to give.
The donor here gave a 1951 Mercury to Mrs. Grove and the 1955 Mercury to William W. Grove. Her intention to give was manifested by having the certificate of title, in each instance, issued and maintained in the donee’s name. The car involved here was registered in Grove’s name, as owner and the applications for the 1956 and 1957 license plates were made in his name as owner. The car was allowed to remain in the donor’s possession in New Orleans solely for her convenient use, because the donee had other cars at his Virginia home. He and his wife used the car when they came to New Orleans and had no reason to deprive Mrs. Morlet of the use of the car in New Orleans.
The Court said in the Woolfolk case, 71 So.2d at p. 864:
“His explanation why he let his wife to continue to use the car after they became separated strikes us as being quite plausible.” That applies here, Mrs. Grove was like Mrs. Morlet’s daughter. She and her husband had their cars and they left the donated car here in Mrs. Morlet’s care for her convenient use, simply as an accommodation to her.
In his written opinion, Judge Yarriit correctly said:
“From the evidence, I am satisfied that the automobile was intended for and was actually delivered originally to Grove as a manual gift from his foster mother-in-law, and that its retention and partial use by her was satisfactorily explained by him. Grove has fully sustained the burden of proof.”
The judgment appealed from is affirmed.
Affirmed.